Mr. Kresak, I probably didn't pronounce that correctly, but you can correct me. Okay, you may proceed. I still didn't get your name. It's what? Kresak. Thank you. You may proceed. May it please the Court, my name is Matthew Kresak and I represent Victor Fuentes. I would like to reserve three minutes for rebuttal. Before the IJ, my client displayed clear indicia of incompetency. He told the IJ that he suffered from serious mental disorders, including schizophrenia, bipolar disorder, and anxiety attacks. He told the IJ that he was taking psychiatric medication to deal with these disorders, that he suffered from memory loss and a lack of concentration, and that he engaged in self-harm. Further, as his attorney flagged, his answers were frequently nonresponsive and disjointed. Given these clear indicia of incompetency, the IJ had a duty to assess competency under the rigorous procedural requirements prescribed by the BIA. But the IJ departed from these requirements in at least two key ways. First, the IJ was obligated to request a copy of my client's medical records. She never did so here, and the government has not rebutted this straightforward error. When you say obligated, your client's lawyer didn't request the IJ to do that, correct? Correct. She put the issue of mental competency at the discretion. She did not say to the IJ, my client is incompetent, right? She said, Judge Bennett, she said that my client suffers from mental disorders. Right, but she didn't say, my client is incompetent. I think she didn't represent that clearly, but she did, again, put it at the discretion. And she didn't bring up the MAM case. She did not bring up the MAM case precisely. Setting aside whether she cited the case name or not, let's talk about Calderon-Rodriguez, where we said that the IJ abuses its discretion if it doesn't make sure that the government has met its burden of producing records that are in its cussy that go to competency. Did the IJ do that here? No, Judge Christian. That's exactly our point is that this MAM is very clear that this is an affirmative obligation, not on counsel but on DHS and the IJ to request and provide these records. And that was never provided here by the DHS or the IJ. But I agree with Judge Bennett that the case name was never cited, right? Right. Have we required that? No. And I think this Court's exhaustion jurisprudence says there's no need to use precise legalese. The fact that competency was before the IJ is enough to exhaust the MAM issue. I think that's right, but you're skipping a step, if I could. I agree that our exhaustion jurisprudence is broad. The question is whether the agency had a fair chance to rule on the issue. Was the issue teed up? So what's your best argument that it was teed up, please? So if you look at what the IJ was doing, she was applying some kind of competency framework. She clearly understood that there was a competency inquiry to be had. It's most of her opinion below and a big focus of the transcript. So our position is if she's applying a competency framework, it's not unreasonable to ask her to apply the framework prescribed by the BIA for this exact situation. What should she have done that she didn't do? So a few things. The medical record issue is one, obviously, we've talked about. But we recognize that MAM gives IJs some latitude here, but what she did was far below even those minimum standards that MAM prescribes. But MAM says in this case there's good cause to believe that the respondent lacks sufficient competency. The record includes several psychiatric reports, and during criminal proceedings he was found unfit. Before the IJ, he had difficulty answering questions. So here, is it your contention that, and I don't want to make light of your client's illness, schizophrenia is a very, very serious medical issue. But are you saying there are magic words that if someone is diagnosed with schizophrenia, that that automatically means that the IJ, in the absence of a request, has to do an MAM analysis? So I think we would say that schizophrenia, I think a history of mental illness alone, and MAM says this, if you have some history in your past of mental illness, that's not going to overcome that minimum presumption to show indicia of incompetency. I think if there was active and ongoing schizophrenia like my client displayed, not just that, but bipolar disorder, anxiety attacks, memory issues, all the things that were indicia of incompetency here, that does trigger the MAM duty to take some steps to assess. But the case doesn't say that, right? The case doesn't say that simply suffering from mental illness, and in this case, in MAM, if I'm remembering correctly, there was information in the record that the then-respondent wasn't getting his medication. Here, there's no indication that he wasn't getting his medication, right? So that would be certainly something that the IJ should have asked about. I mean, that's a basic orienting question about mental illness. Could I back up? Because you're losing me about what it is you think that MAM requires. Sure. First of all, do you think that this record, I take it, you think this record raised indicia of incompetency, is that right? Right. Okay, and you've explained why you think that, but once that happens, what do you think the law requires? Right. So we would say two things. All right. They have to request the medical records. Who's the they in your sentence? So, sorry. The immigration judge has an independent obligation. Correct. Under Calderon-Rodriguez. Right. Correct. And then what? And then, so again, we recognize that IJs have some latitude, but the precedent here is very clear. They have to take some measures. So what are those measures? We would contend that it's a spectrum. On the low end, there is very short and direct questioning. That's what MAM says. On the high end, you can order continuance for a medical evaluation, et cetera. So we think our clients in discharge of incompetency were severe enough that it should have been on the high end, setting that aside. The low end is short and direct questioning that should have asked basic orienting questions. Well, there's a question here. Do you remember not understanding any questions the asylum officer asked? The answer was, I don't remember. So, well, that was all the more in discharge of incompetency, but I would say. Let me ask you about your reference. There's a reference in here that Petitioner says DHS provided him with over 1,000 pages of medical records. Was this following this proceeding? That was following it. This was on our request. Your request. So afterwards you discovered that there were 1,000 pages of medical records that should have been produced, and IJs should have taken them into consideration? That's our position, yes. So I can confirm that these records exist. I know. Are they part of the record? Our record? No, they're not part of it. So we can't look at them. No. But we could remand and IJ could look at them. That would be certainly something that would be required from MAM on remand if you remanded for proceedings consistent with that. And he was detained? I noticed on your brief it says that he is detained at the time of the briefing. Is he still detained? That's right, Your Honor. And was he detained at the time of the hearing? That's right. Okay. My understanding is he'd been detained for 10 months. What I can't tell is whether the records that Judge Wardlaw was just inquiring about, I agree with her, we don't have them, right? Okay. So can we tell from our record whether those were from a prison or were those generated while he was in detention? You can't tell from your record. I can say that they're DHS. If we can't tell, we can't tell. I just wanted to make sure I wasn't missing something, so I appreciate that. I don't have anything further. Where did I get this? I have a note. Petitioner says he obtained. Is that in your briefing? That's in our briefing, yes. That's in our opening brief. That was in conjunction with a request after the IJ ruled? A request that a special motion, I think, that you made to request remand for a new interview? That was something that we requested after taking over the representation from DHS. Did you get a ruling on that motion? No. That was over a year ago, and that hasn't garnered any follow-up. Okay. Do you want to reserve the rest of your time? Sure, I'll reserve the rest of my time. Thank you. Thank you. Ms. Morgan? Good morning, Your Honors. May it please the Court, I'm Carmel Morgan on behalf of the respondent, the U.S. Attorney General. Mr. Fuentes had counsel throughout these proceedings. These proceedings are different from the proceedings that the Court has addressed MAM in its published decisions. Are you saying that MAM does not apply to this kind of proceeding? I can now say that MAM, the government's position is that MAM does not apply in reasonable fear proceedings. Why can you now say that? I asked EOIR to give me their opinion on that, which I got yesterday afternoon on my way here. Why is it that MAM would not apply, and our precedent in Calderon-Rodriguez would not apply? Yeah. It's not in my brief, but if you'll let me explain, I can share what EOIR shared with me. I don't think we can share that because it's not in the record. It's not a binding opinion. It's some advice that you got within your agency. I don't think that's appropriate. Well, is your position going back to Calderon-Rodriguez? I just want to give you a fair chance to respond because that is in the briefing, and it seems to me to be squarely applicable and problematic for the government because it does seem to me that our precedent requires the IJ to affirmatively inquire and make sure that the government has produced records, if it has any, or not just records, evidence that it has that might pertain to the issue of competency. Government didn't do that here. Is it your position that the government didn't need to do that? That's not exactly my position, I don't think. Are you free to tell us what your position is? Yes. Because it's going to be pretty tough for us to do our job if the government doesn't tell us what its position is. Do you have some opinion or something you could point to or a citation? You could do that. I do. Okay. First of all, if you look at MAM, MAM is really strongly grounded in the removal statutes. And so in MAM, when they're talking about this independent obligation, they reference a statute which applies to removal proceedings, and it applies to DHS counsel. MAM says that it applies to immigration proceedings writ large, and it's the BIA's own rule, and competency was raised here, or at least that's my definite reading of the record. And so I'm trying to figure out whether it's the government's position that it didn't have to proffer evidence it had in its possession that goes to competency. The statute that MAM refers to is for- But what MAM says is the test for determining whether an alien is competent to participate in immigration proceedings is whether he or she has a rational and factual understanding. It does not limit it to removal in any way. Not the part you just quoted, but several other pieces reference cross-examining witnesses, references a notice to appear, and this very specific statute refers to the obligation of DHS counsel to provide this information. And I guess what I would say to you is I'm not quite sure how this is triggered in reasonable fear proceedings because DHS counsel isn't present. Before the IJ, the Blue Brief is squarely focused on the IJ. This had been raised. You can argue with me about that if you want. That's fair pushback, but I'm trying to ask you to assume for the sake of argument that it was raised, that both the asylum officer and the IJ recognized that was an issue. They certainly inquired about it. The IJ ruled on it, but what would be helpful to me is to understand whether the government is taking issue with our precedent in Calderon-Rodriguez, that it had a duty to come forward with the evidence that was in its possession. I can't tell what your response is on that. Yes. MAM quotes a statute that refers to— You realize I'm asking not about MAM. I'm asking about Calderon-Rodriguez. Okay. Okay. Calderon-Rodriguez is looking at MAM, and there's a statute that refers to the obligation of DHS counsel. These are non-adversarial proceedings, so DHS counsel isn't present. Counsel, am I correct that one of your arguments as to why the government's position is this claim isn't exhausted is because then Respondent's Counsel didn't raise the MAM issue, and so the IJ never had an opportunity to pass in the first instance on whether MAM applied? That's exactly the government's position. But the IJ did pass on Competency Counsel. Can you point to any case where we have said that a matter was unexhausted, where the IJ actually ruled on it? I can point to a case that's somewhat analogous. Okay, what's that? It's not in my brief, but it's Benedicto, which is another case that discusses MAM. It's a published decision. Could you give me the citation? I can, if you hold on just a second. It's 12F41049. In that decision, the court recognized that competency was clearly addressed. Again, these weren't reasonable fear proceedings in Benedicto. It was separate removal proceedings. But on the exhaustion issue, the court found that an issue that was raised by Amicus was not exhausted, where Amicus had said apparently they felt like additional safeguards were necessary, and the court did not address that because they found the issue was not exhausted. But, again, your position is there are two separate exhaustion issues here, whether competency was exhausted and whether the applicability of MAM and reasonable fear was exhausted. Okay. Is that correct? Yes, I do agree with you there. Well, I'm just stating what my understanding is of your position. I'm trying to get you to tell him what your position is and if he's understanding it correctly. On the latter, absolutely that's the government's position, is that the specific framework of MAM was not raised before the agency. The specific framework, as opposed to the issue of competency? On the issue of competency, I think there's also a question, because Mr. Fuentes' counsel didn't say she felt like he was incompetent, that she couldn't represent him, that she couldn't communicate with him, that he didn't understand the questions. The IJ ruled on competency, right? And is it your position that competency was indicative of competency were not triggered here after the IJ had been informed they had schizophrenia and bipolar and took medication? Here's what's frustrating to me. I want to give you a chance to respond to this. My understanding of this, on the one hand, this matter of MAM and its progeny, is a safeguard for the individual. But, on the other hand, it safeguards the integrity of the expedited removal process. Otherwise, we get to the very end. There's an issue raised. If the government hasn't come forward, if the IJ hasn't said get us these documents, and we do it all over again. There's an IAC claim, and we start back up and do it all over again. So it seems to be it's a very low bar to be competent for this type of proceeding. We certainly understand that if someone is found to be competent or even to be lacking and some additional help is required, that this person is very likely going to be removed. I don't think we're under any misunderstanding about that. But this seems like a very low bar, and yet the checklist that the IJ goes through doesn't include mention of this, and that just seems like a recipe for disaster. So it is frustrating, indeed, to see the government's position on this. It seems to me there's a very strong incentive to get, to make sure that we get those records and that it's fairly adjudicated on the front end. Do you have any indication, can you shed any light on why these records weren't produced? I think one reason was that counsel didn't ask for them. Well, they asked for them now. This proceeding is still ongoing, and they've asked for them now, and they say it's been a year and they haven't gotten them. Oh, I think they did get the records. He's had a motion pending for a year that Judge Lord was referring to, a motion to request a re-interview given that there's all these records, and he said he's been waiting for a year. We don't know that, but that was just represented. Right. Because it's not in the record, I don't know what those medical documents. So you haven't seen the documents? Oh, no, I have not seen any. So the agency you represent gave these documents to Petitioner, and Petitioner has them and you don't? Correct. Doesn't that strike you as odd? It does. Were they not attachments to his request for the supplemental interview? I don't have the records for the request for the supplemental interview. Why not? I don't understand that. They were not part of the record on appeal, which is what I did. So you just have the appellate record? Right. Nothing else? That's right. Could you have asked to see the other records? I suppose I could have asked, yes, Your Honor. But they're at the heart of this case. I think it isn't the heart of this case, if I may, because competency is fluid, and the immigration judge had a transcript of the proceeding before the asylum officer, during which the Petitioner represented his position very well about what his fear was. He had many details. I didn't find it confusing or disjointed. And because this was raised, the immigration judge, I do think, felt like this was perhaps indicia of incompetence because she asked him a series of questions, which confirmed to her again that he understood, that he told the same story over again. And so even if she had those records, it would amount to harmless error. Counsel, I need to push back on that. I mean, I think that one of the unfortunate things about mental illness, including schizophrenia, is that somebody does have the ability to sound rational, even with a serious mental illness, but that doesn't mean that they are. So, I mean, if we're looking at just a priori, making a determination of competency for someone who is seriously mentally ill, I find it difficult to understand how, if we get to that question, an immigration judge, a magistrate judge, or anyone else can make that decision without looking at at least some of the medical records, including the medication records, because schizophrenia can be well controlled, but that doesn't mean just because a person sounds logical that it is well controlled. I think the most salient point was his behavior in court and his own admission before the asylum officer that he was feeling good and he was taking his medication. There's a presumption of competency, and the bar is actually pretty high. You have to show that you don't understand the nature and object of the proceedings and that you can't assist your counsel, which his counsel never said that was the case. Did the IJ inquire? You've indicated, and I appreciate your candor, that there were some indicia here. Is it your position that the IJ inquired about whether this individual understood the nature of the proceedings? We've given specific lists of questions, not a recipe, but the types of questions that would be helpful. I don't see them here in the record. I just see the one that I mentioned, which is I just repeated about whether he had trouble remembering, and he said he doesn't remember, so that wasn't helpful. But I don't see the kinds of questioning. Again, that's why I've described this as a very low bar. It doesn't take much to be deemed competent under this standard, and it doesn't take much to inquire. Well, the IJ had the transcript of the proceeding before the asylum officer, during which the asylum officer confirmed that he had received a paper that explained the proceedings, asked if he had received that and understood it. He said yes, and he had his counsel with him, who did interject at one point and ask if the asylum officer would make one of the questions simpler, more elementary, and the asylum officer did so. Counsel didn't make any other requests of the asylum officer or the immigration judge with regard to competency. She said, I will leave it at your discretion to the immigration judge. The one thing she did offer was to repeat the diagnoses and then said she would leave it to the judge's discretion. I agree with you. Hence the concern about if this were sufficient, and again, if this were sufficient, it seems like it's a recipe for asking us to do these proceedings all over again. On the back end, it will just be called an IAC proceeding. I guess I've given this a lot of thought, and there are many diagnoses. So, for example, someone says, I have been depressed, but I'm on medication and I'm feeling good. Is that a situation for which the government? It's certainly fact-specific. I think our caseload recognizes that, and it's a fluid situation. I appreciate that. Further questions? All right. Thank you, counsel. Mr. Crescio. Just a few quick points, Your Honors. I think the exchange with opposing counsel about the reasons for not turning over the medical records and why that violates Calderon-Rodriguez was telling the government really has no reason why they didn't turn these over. They rely on exhaustion and an argument that MAM doesn't apply. First, as to exhaustion, there are no cases that the government points to that operate exhaustion the way they would have it, where you have to cite the specific legal framework for competency. In fact, we have at least an unpublished case, exactly on all fours here, where it says Bailey v. Garland, where it says raising competency was enough to put the IJ on notice of MAM. And also that, more broadly, the government's exhaustion position is just inconsistent with how the MAM framework works. If you look at matter of JSS, it's another BIA opinion, it says that the MAM framework follows the competency framework of civil habeas proceedings. And that says the burden on the person seeking competency measures is just to put the court on notice of competency. After that, it's an inquiry for the court. So to say that to Shirley, Mr. Fuentes, satisfied that minimal burden of putting the IJ on notice. Counsel, if we decide that somebody needs to look at these records to decide if there's a problem, what is your position at that point? What ruling should we enter? I think remanding consistent for proceedings with MAM would be consistent with sending it back to the IJ and getting those records and redoing the competency analysis with those records and with a more searching inquiry. Would the analysis be of the competency at the time the original reasonable fear determination was made? Or is the competency determination when it goes back? Or would it be both in your view? Judge Bennett, I think MAM is pretty clear on this, that given the nature of mental illness, it's not static. It has to be assessed at each stage of the proceedings. So our position is that if you sent it back, it would be competency at the time of the inquiry that's being made. So even if the record showed that your client was competent at the time of the actual reasonable fear interview, there would have to be a separate competency determination at the time of the remand. Why would that be? I think it would be impossible to say whether my client was competent because the competency inquiry, the judge, for failure to obtain the medical records and for failure to ask these basic questions, we can't assess. She didn't suss out the relevant information of whether my client was competent then. So we can't assess whether he was competent then when the basic questions to suss out that information were asked. So your view is that if we were to agree with you, that whole proceeding is out the window and there would have to be a de novo reasonable fear hearing after a determination of competency? Yes. Yes, Judge Bannon. If there are no further questions, we ask the Court to affirm the petition or to grant the petition for review. Thank you. Thank you. And I want to thank you, Mr. Krasioski. I cannot pronounce your name because the way you pronounce it is so different than how it looks on the paper. But anyway, you and your firm, Jones, stay for your pro bono representation. Thank you very much. Thank you. Okay. Fuentes v. Garland is submitted.
judges: WARDLAW, CHRISTEN, BENNETT